**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BIAGGI & BIAGGI, P.S.C.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WESTERNBANK PUERTO RICO,<br><br>Defendant. | CIV. NO. 10-1671(PG) |

**OMNIBUS OPINION AND ORDER**

This is a collection action for attorney and notarial fees allegedly owed to plaintiff Biaggi & Biaggi, P.S.C.'s ("Biaggi") for work rendered to Westernbank Puerto Rico ("Westernbank" or "WB"). Both parties filed Motions for Summary Judgment (Docket Nos. 39 And 77) that are currently pending before the Court. For the reasons explained below, both requests for summary judgment are **DENIED**.

**I. Background**

The following factual narrative is derived from facts that are deemed uncontested by the Court because they were included in the motion for summary judgment and were agreed upon or properly supported by the evidence and not genuinely opposed.

On September 9, 2009, Biaggi filed a complaint in the Court of First Instance of the Commonwealth of Puerto Rico, Mayaguez Part, against Westernbank. Biaggi's complaint alleged that Westernbank failed to pay Biaggi notarial fees and expenses in the amount of $401,067.92. On December 14, 2009, Westernbank answered the complaint and acknowledged that it owed Biaggi $106,802.51 while denying it owed any further amount. Westernbank then amended its answer to the complaint and recognized a debt of $74,399.51. Subsequently, Westernbank deposited and Biaggi withdrew the sum of $74,399.01. After withdrawing the funds, Biaggi filed an amended complaint demanding payment of $619,626.45.

On April 30, 2010, Westernbank was closed by the Commissioner of

Financial Institutions and the FDIC was appointed as receiver. After the Commonwealth Court approved the substitution of Westernbank for the FDIC, the later filed a notice of removal to federal court.

On February 8, 2011, the FDIC filed a Motion for Summary Judgment. See Docket No. 19. Because plaintiff failed to file an opposition, the Court deemed the Motion as unopposed. See Docket No. 22. On March 22, 2011, Magistrate Judge Justo Arenas entered a Report and Recommendation recommending that the Motion for Summary Judgment be granted. See Docket No. 23.

On May 5, 2011, Biaggi filed an objection to the R&R and Opposition to Motion for Summary Judgment. See Docket No. 29. The FDIC replied. See Docket No. 33. On July 11, 2011, the Court entered an Opinion and Order adopting the R&R and granting the FDIC's Motion for Summary Judgment. See Docket No. 34. Both parties filed motions for reconsideration. See Dockets No. 35 and 36.

On August 17, 2011 the Court granted Biaggi's Motion for Reconsideration and denied the FDIC's. See Docket No. 38. In essence, the Court agreed with Biaggi's contention that the relationship between Biaggi and Westernbank was one of agency or depositum contract. See Docket No. 38.

In the meantime, on August 2, 2011, the FDIC's Board of Directors formally determined that there were insufficient assets existing in the Westernbank receivership to make any distributions to general unsecured creditors ("worthlessness determination"). See Docket No. 39-1.

On August 31, 2011, the FDIC filed a Motion to Dismiss or for Summary Judgment and a Supporting Memorandum of Law. See Docket Nos. 39 and 40. The FDIC informed the Court that based on the no-value determination of August 2, 2011, plaintiff had no recourse. It thus moved to court to find that it lacked subject matter jurisdiction and to dismiss the action. Id. Plaintiff filed a Response in Opposition. See Docket No. 44. Biaggi claimed that it was not a general, unsecured creditor of Westernbank, but a depositor and was thus not affected by the no-value determination. Plaintiff put forth the argument that Westernbank deducted attorney's fees from the loan proceeds and that those funds were held in depositum to be paid to Biaggi. Id.

Following a court-ordered stay to allow the parties to engage in settlement negotiations, the FDIC filed a reply. See Docket No. 53. The FDIC argued that although it was able to locate an account in Westernbank's general

ledger titled "accounts payable legal fees" the same did not specify that the funds were designated to a specific law firm. Id. at page 4.

Pursuant to a protective order from this court, the FDIC provided copies of the Legal Fees General Ledger to Biaggi for examination. After reviewing the records, Biaggi proceeded to file an Ex-Parte Partial Sur-Reply and a subsequent Complete Sur-Reply. See Docket Nos. 60 and 61. The FDIC filed a response in opposition to Biaggi's Sur-Reply. See Docket No. 62. On September 19, 2012, the FDIC filed a Motion for Leave to File Reply to plaintiff's Sur-Reply with attached Sur-Reply (Docket No. 63) which was granted by the Court on October 11, 2012. See Docket No. 64.

On March 8, 2013, a status conference was held. See Docket No. 68. During that conference, plaintiff asserted that it calculated the debt to be around $140,000.00. Id. The Court granted plaintiff 45 days to submit sworn testimony that the sums itemized on the ledger belonged to Biaggi for legal services rendered. Id. On April 17, 2013, Biaggi submitted a sworn statement by José E. Rivera Guzmán ("Guzmán"). See Docket No. 69.

At the FDIC's request, the Court entered an order granting a stay until the FDIC could take the depositions of several Westernbank employees, including Mr. Guzmán. See Docket No. 74. After completing the discovery requested, the FDIC filed a response to Mr. Guzman's statement. See Docket No. 75. On November 8, 2013, Biaggi filed a Reply to the FDIC's opposition and Request for Summary Judgment. See Docket No. 77.

On September 3, 2015, the Court held a status conference. See Docket No. 82. At the conference, the Court gave the FDIC 20 days to review their records and the invoices provided by Biaggi, to determine the amount owed in attorneys fees. Id.

On October 7, 2015, the FDIC filed an Informative Motion and Submitting Pending Matters for Resolution. See Docket No. 85. The FDIC claims that the receivership estate has no money and thus it is unable to satisfy any of Biaggi's claims. Id. Moreover, the FDIC submitted the pending matters for resolution.

## II. Uncontested Facts

1. On August 2, 2011, the FDIC made a formal determination that the Westernbank Receivership estate did not contain sufficient assets to pay the

claims of unsecured creditors. See Exhibit 40-1.

2. On August 17, 2011, the Court determined that the relationship between Biaggi and Westernbank was one of agency or depositum contract. See Docket No. 38 at page 7.

3. Westernbank's Sub-Ledger Account Number 2355-000 ("Account No. 2355") represents the account payable legal fees. See Deposition of Idelis Acosta Rivera, Docket No. 77-1 at page 14, line 14.

4. All credits in Account No. 2355 were monies retained by WB from the disbursement of loans or payments for the exclusive purpose of paying notarial and legal fees. See Docket No. 77-1 at page 15, lines 7-12; Docket No. 77-3 at page 25, lines 6-14.

5. Each amount retained from the closing of a loan would be reflected as an accounting entry in Account No. 2355. See Docket No. 77-1 at page 17, lines 2-9.

6. Account No. 2355 is organized by customer name and loan number. See Docket No. 53-1 at page 4.

7. Account No. 2355 has a "remarks" section where WB would put the initials of the law firm or attorney that was receiving a check. See Docket No. 77-1 at page 22, lines 2-21; Docket No. 77-2 at page 28, lines 14-23.

8. Account No. 2355 does not itemize the total amount that is owed to a particular firm or attorney. See Docket No. 77-1 at page 23, lines 16-25; Docket No. 77-3 at page 26, lines 20-25 and page 27, lines 1-9; Docket No. 77-4 at page 25, lines 21-25 and page 26, lines 1-4.

9. In order to determine how much money was owed to a particular attorney, it would be necessary to check the invoices from the law firms/attorneys and the closing dates of the different transactions. See Docket No. 77-1 at page 31, lines 20-25 and page 32 at line 1.

## II. Legal Standard

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Prescott v. Higgins, 538

F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir.2008)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a disputed fact to be considered material it must have the potential "to affect the outcome of the suit under governing law. Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (citing Liberty Lobby, Inc., 477 U.S. at 247-248); Prescott, 538 F.3d at 40 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the nonmovant for a jury to return a verdict in its favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The burden placed upon the nonmovant is one of production rather than persuasion. In other words, in weighing a nonmovant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

### III. Discussion

#### A. The FDIC's Motion for Summary Judgment

The Court will first analyze the FDIC's claim that Biaggi is a general unsecured creditor of Westernbank and thus, cannot obtain relief. The gist of the FDIC's argument is that the WB Receivership estate does not contain sufficient assets to pay the claims of unsecured creditors, such as the plaintiff in this case. Therefore, the case must be dismissed on prudential mootness grounds.

It is undisputed that, on August 2, 2011, the FDIC made a no-value determination. According to the no-value determination, the total assets of the Werternbank Receivership were $4.6 billion while the total administrative expenses and deposit liabilities totaled $8 billion. Id.

The Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, establishes a scheme to guide the FDIC in distributing claims against the failed institution. See 12 U.S.C. § 1821(d)(11)(A). The statutory priority in which claims are paid is as follows:

administrative expenses of the receiver must be paid first, followed by any deposit liabilities of the failed institution, and finally general creditor claims. Thus, payments to general unsecured creditors may be made only after the receiver's administrative costs and deposit liabilities have been fulfilled.

In its opposition Biaggi agreed that dismissal would be appropriate if the money owed was a general unsecured credit. The twist, says Biaggi, is that because their relationship with WB was one of depositum, they are entitled to recover as a general secured creditor. See Docket No. 44.

Furthermore, it adds, the personal property turned over to a depositary does not become part of a depositary's estate but rather belongs to the beneficiary of the depositum contract. See P.R. Laws Ann. tit. 31, §4661. Biaggi concludes that a verbal depositum contract was created and therefore, it is entitled to return of the funds that were retained and are being improperly withheld.

To rebut the FDIC's contention that Biaggi's debt is merely an unsecured claim, the plaintiff points to the deposition of Idelis Acosta Rivera. Acosta Rivera was a supervisor in the loan area within the accounting department. See Docket No. 77-1 at page 12, lines 2-13. She corroborated that the monies deposited in Account No. 2355 do not belong to WB but to the attorneys who did the legal work on the closings. See Docket No. 77-1 at page 32, lines 2-14. This statement supports the Court's previous determination that the relationship between the FDIC and Biaggi was one of depositum.

The Court thus finds that Biaggi has raised an issue of material fact that precludes Summary Judgment on the FDIC's favor at this juncture. Because the FDIC did not establish that Biaggi is a general unsecured creditor, it cannot establish that there are no set of circumstances under which Biaggi could recover from the receivership state. See e.g., F.D.I.C. v. Kooyomjian, 220 F.3d 10, 15 (finding that prudential mootness barred defendant's claim where defendants were *unsecured* creditors)(emphasis supplied).

Hence, the FDIC's Motion for Summary Judgment is **DENIED**.

### B. Biaggi's Motion for Summary Judgment

Biaggi asks us to hold partial summary judgment for them on the issue of the depositum contract. Furthermore, Biaggi asks that the Court to order the

FDIC to pay the amount of $150,312.78 from the funds deposited at Account No. 2355.

This Court had already determined that WB and Biaggi had a depositum contract. Those contracts may arise in several contexts. "A business can act as depositary when it agrees to safeguard an item while performing some service on it for the depositor." Jewelers Mut. Ins. Co., 410 F.3d 2, 12 (1st Cir. 2005). "Further, a creditor can act as depositary when it attaches a debtor's property in order to secure the effectiveness of a judgment." Id. "When determining whether the parties have formed a depositum contract, the Puerto Rico Supreme Court has,[...], focused on whether or not the delivery of the thing has been accomplished, whether the [depositary] has received the effective possession and control of the thing to the point of excluding the possession of the owner himself...." Id. at 13 (citing Nicole v. Ponce Yacht Club, 96 P.R. 286, 290 (1968)) (internal citations and quotation marks omitted).

According to Biaggi, because the parties had a depositum contract, WB owes Biaggi certain funds that are still available at Account No. 2355. This is the account payable where the funds retained from loan closings were deposited. See Docket No. 77-3 at page 25, lines 6-10. WB would later pay the lawyers and notaries who had worked on each case from the funds retained. Id. at lines 10-14.

To support its claim, Biaggi relies on the statement under penalty of perjury signed by José M. Biaggi Junquera. See Docket No. 77-5. In the statement, Biaggi-Junquera states that he analyzed the "Customer Balance" amounts corresponding to loans executed by Biaggi. See Docket No. 60 at ¶2. Biaggi-Junquera then cross-referenced the "Customer Balance" amounts to clients of the firm for which Biaggi had rendered closing services. He also verified the posting dates of the transactions in Account No. 2355; the balance in the account and the amounts previously paid to Biaggi from funds deposited in the account.

He concluded that Biaggi was entitled to a grand total of $149,512.78 in outstanding legal fees. See Docket No. 61 at ¶6. In a Supplemental Sworn Statement filed on August 24, 2012, Biaggi Junquera corrected the original Sworn Statement to increase the total pending balance to $267,020.57. See

Docket No. 61-1. And, finally, in the Motion for Summary Judgment, Biaggi claims that the outstanding amount is $150,312.78. See Docket No. 77-5.

The FDIC refutes owing any money to Biaggi. It states that, despite a thorough search, it could not locate any account on its books that held the name of Biaggi or was "in any way designated as being held for the benefit of Biaggi & Biaggi, P.S.C." Id. at page 2. To that effect, the FDIC attached the Declaration of Robert C. Hill (the "Hill Declaration"). See Docket No. 53-1. According to the Hill Declaration, WB recorded any proceeds held for the purpose of paying legal and notarial fees from loan closings in Account No. 2355. Id.

Hill explained how the Accounts Payable Legal Fees sub-ledger was divided.

> For each loan borrower, there is an entry listing the date the money was credited to the ledger, the Westernbank branch where the loan was originated, the name of the customer, the loan number, the amount credited to the ledger for the customer, the amount debited from the ledger for the customer, the resulting customer balance and a "remarks" section in which Westernbank employees noted the check numbers and dates from payments made to law firms. Most of the entries also contain an invoice number for the invoice from the law firm that was being paid.

See Docket No. 53-1 at ¶7.

Hill related that none of the amounts recorded in the Accounts Payable Legal Fees sub-ledger were designated to a specific law firm or lawyer. Id. at ¶8. According to the FDIC, Westernbank did not hold any funds under Biaggi's name because the funds were in the name of the customers(i.e., the bank's clients), not the law firms. Since there is nothing on the books evidencing that the sums were held for a particular firm, the FDIC concludes that it cannot assume that they belong to Biaggi. Id.

The Court agrees with the FDIC's argument, to some extent. The December 21, 2007 statement from Account No. 2355 shows that there were certain amounts deposited that were retained from the loan closings. See Docket No. 77-3 at page 37. The FDIC does not refute this much.

What is unclear is how much of those proceeds belongs to Biaggi. In their supporting documentation to the Motion for Summary Judgment, the firm

did not properly show the lack of a genuine, triable issue of material fact as to the amounts in question.

First, it is undisputed that Account No. 2355 does not itemize the amounts owed to a particular lawyer or firm. According to the Sworn Statement of Mr. Rivera Guzman, Vice-President of the Commercial Loan Department of Westernbank, the codes identifying particular law firms are only found in the remarks section of the reconciliation of Account No. 2355 after they were paid to each law firm. In addition, Rivera Guzman testified that without the remarks column, there was no way to tell which suppliers the monies belonged to just by using the General Ledger page. According to Rivera Guzman, he "would have to have the file for that loan" to verify whether a copy of the law firm's invoice was in the file. See Docket No. 75-1 at page 39, lines 4-6.

The testimony of Idelis Acosta Rivera also supports Rivera Guzman's statements. The former Supervisor of the Loan Division within the Accounting Department of WB indicated that just by looking at the ledger, it was not possible to tell which firm had made legal work for which client. See Docket No. 77-1 at page 23, lines 16-25. Only with the corresponding invoice could WB establish a correlation between the funds deposited and the law firms that had performed work for each closing. See Docket No. 77-1 at page 28, lines 24-25 and page 29, lines 1-17.

Mr. Biaggi Junquera precisely carried out that exercise but his calculations are not properly supported by the record. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e)(2).

For instance, the bulk of Biaggi-Junquera's calculations are evidenced only by his own statements. There is no indication that all the invoices were submitted to WB. Likewise, Biaggi did not provide copy of all the invoices that are allegedly owed. Therefore, the claim is undeveloped and unsupported by evidence. See FDIC v. Estrada-Rivera, 722 F.3d 50, 54 (1st Cir. 2013).

Taking into account the facts in the light most favorable to the movant and drawing all reasonable inferences in its favor, the Court declines to grant the motion for summary judgment. The Court understands that there might be some outstanding invoices for legal services that are yet to be paid and are held in depositum by the FDIC. However, it is not possible at this juncture to determine the precise amount.

Biaggi's request for Summary Judgment on the issue of the amount owed by WB is thus **DENIED**.

### III. Conclusion

For the reasons set forth herein, both the FDIC's and Biaggi's requests for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, October 23, 2015.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. District Judge